OPINION
{¶ 1} Defendant-appellant Chester Milton Bailey appeals his convictions entered by the Stark County Court of Common Pleas, on one count of improperly discharging a firearm into a habitation, in violation of R.C. 2923.161 (A)(1), with an attendant firearm specification; one count of felonious assault, in violation of R.C. 2903.11 (A)(2), with an attendant firearm specification; one count of having weapons while under a disability, in violation of R.C. 2923.13 (A)(3); and one count of failure to comply with the order or signal of a police officer, in violation of R.C.2921.331 (B)(C)(4)(a), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On June 13, 2005, the Stark County Grand Jury indicted appellant on the aforementioned charges. Appellant appeared before the trial court for arraignment on June 17, 2005, and entered a plea of not guilty to the indictment. The matter came on for jury trial on November 8, 2005. Prior to the commencement of trial, appellant waived the jury trial with respect to the weapons under disability charge. Appellant agreed to have the trial court render a verdict thereon.
 {¶ 3} The following evidence was adduced at trial.
 {¶ 4} Michael Rhoades testified he was at his residence on 16th Street, N.E., in Canton, Ohio, on March 3, 2005, at approximately 11:30 pm. Rhoades' wife and children as well as his father, his father's girlfriend, and a friend were also at the residence that evening. Rhoades and his friend were hooking up surround sound to his television when the group heard a loud noise. Rhoades' wife asked if the noise was a gunshot. Rhoades replied he did not think so, but approximately one minute later, he heard someone screaming and yelling, "Oh, my God, somebody got shot." Tr. at 137.
 {¶ 5} Rhoades ran upstairs, retrieved his gun, and went outside. Standing just outside his door, Rhoades saw two men and a woman at the back of the driveway. Rhoades yelled at the group to leave. The taller of the two men turned around, looked at Rhoades, and fired two shots from his weapon. The shooter, who was later identified as appellant, ran across the driveway and hid in some bushes behind a fence. Rhoades discharged his weapon into the bush. Appellant ran across the front yard, entered a blue Chevrolet suburban, and drove westbound toward Market Avenue.
 {¶ 6} Rhoades stepped inside the house as a bullet ripped through the front window. Rhoades' wife and friend were in the room at the time. Rhoades ran outside again and saw appellant in the suburban, driving in the opposite direction. Rhoades was unable to get a good look at appellant, however, appellant was the only person in the vehicle, which had made a u-turn to shoot into the living room. Rhoades recalled he had seen the suburban in the area quite often and, specifically, at approximately 5pm that day.
 {¶ 7} Shawn Overdorf, an officer with the Canton Police Department, testified he was working the 5pm to 3am shift on March 3, 2005, in a black and white police van when dispatch "[p]ut out a shots fired call on a light blue with a blue stripe full-size older model Chevy suburban." Overdorf observed the vehicle parked at the Hall of Fame Market on the corner of Cherry and Sherrick Avenues. Overdorf called for assistance, circled around to park across the street, and waited for backup. However, the suburban began to pull out of the gas station. Overdorf activated his lights and approached the vehicle head on, blocking it. Ovedorf jumped out of his van with his gun drawn and ordered appellant to put his hands up. Overdorf had to repeat the order several times as appellant would put his hands up and immediately put them back down into his lap. Appellant then grabbed the steering wheel, hit the gas, made a sharp left around the police van, and drove down Cherry Avenue.
 {¶ 8} Overdorf returned to the police van and placed a call, advising he was in pursuit. Appellant made a right turn onto Allen Page Drive, pulled into a parking lot, and jumped out of the suburban while the vehicle was still running. The suburban continued moving until it crashed into two parked vehicles. Overdorf pursued appellant on foot. Appellant ran into an apartment building, after which Overdorf lost sight of him. While in the building, appellant dropped his cell phone.
 {¶ 9} Sgt. Lester Baroni, who was assigned to investigate the case, impounded the suburban. During the inventory search, Baroni collected a Verizon cell phone registered to appellant. Another officer subsequently found a .380 Windchester shell casing between the passenger seat and the center console of the suburban. Baroni also investigated the scene of the shooting and observed what appeared to be a bullet hole through the front window of the Rhoades' living room and through the opposite wall. From the angle of the bullet hole, Baroni was able to opine the gunshot came from the street in front of the house. Officer Kevin Clary, who responded to the Rhoades' residence on March 3, 2005, collected a bullet out of the living room wall and a .380 caliber shell casing at the rear of the residence.
 {¶ 10} Dennis Florea of the Stark County Crime Laboratory examined the two spent cartridge casings and the bullet. Florea concluded the casings and bullet were fired from the same .380 caliber Windchester.
 {¶ 11} Appellant testified on his own behalf. He admitted being present at the scene of the shooting, driving the suburban, and attempting to elude the police. However, appellant denied his possession and use of a gun on the date of the incident.
 {¶ 12} After hearing all the evidence and deliberations, the jury found appellant guilty of improperly discharging a firearm, felonious assault, and failure to comply. The trial court subsequently found appellant guilty of having weapons under a disability. The trial court ordered a pre-sentence investigation and continued the matter for sentencing.
 {¶ 13} On November 8, 2005, appellant appeared before the trial court for sentencing. At that time, counsel for appellant and the prosecutor advised the trial court the parties had reached an agreement regarding a sentence. The prosecutor presented the trial court with a proposed judgment entry which was signed by the prosecutor, appellant's counsel, and appellant. The trial court approved the judgment entry and sentenced appellant to serve a term of ten years. The Judgment Entry was filed November 8, 2005.
 {¶ 14} It is from these convictions appellant appeals, raising the following assignment of error:
 {¶ 15} "I. APPELLANT'S CONVICTIONS FOR THE WEAPON RELATED OFFENSES ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 16} In his sole assignment of error, appellant challenges the weight of the evidence. Specifically, appellant contends the State failed to identify him as the individual possessing or using the weapons during the incident. We disagree.
 {¶ 17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 18} Upon review, we find the record included both circumstantial and direct evidence appellant was the shooter. The fact appellant admitted to being near the Rhoades' residence at the time of the shooting as well as his admission he was driving a Chevrolet suburban, heading toward Market Avenue after the shooting is circumstantial evidence appellant was the shooter. Det. Overdorf specifically identified appellant as the driver and the only occupant of the Chevrolet suburban during the officer's pursuit. Overdorf observed appellant from a distance of approximately two feet. Rhoades also testified the only occupant of the Chevrolet suburban was the driver. Appellant admitted to fleeing when the police tried to stop him. Evidence of flight may tend to indicate consciousness of guilt. Appellant admitted to driving the suburban. During the inventory search of the suburban, the police found papers belonging to appellant. Furthermore, a cell phone recovered during the pursuit of appellant was registered in his name.
 {¶ 19} The jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Accordingly, we find there was sufficient, competent credible evidence to support appellant's conviction, and the jury's verdicts were not against the manifest weight of the evidence.
 {¶ 20} Appellant's sole assignment of error is overruled.
 {¶ 21} The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reason stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.